Robert C. Morgan (SBN 46348)
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, New York 10036-8704
Tel.: (212) 596-9000
Fax: (212) 596-9090
robert.morgan@ropesgray.com

Clinton L. Conner (SBN 244244)
ROPES & GRAY LLP
525 University Avenue
Palo Alto, California 94301
Tel.: (650) 617-4000
Fax: (650) 617-4090
clinton.conner@ropesgray.com

Terry Kearney (SBN 160054)
Matthew A. Argenti (SBN 240954)
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, California 94303
Tel.: (650) 493-9300
Fax: (650) 493-6811
tkearney@wsgr.com
margenti@wsgr.com

Attorneys for Defendant
LUXIM CORPORATION

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| CERAVISION, LIMITED,<br><br>          Plaintiff,<br><br>     v.<br><br>LUXIM CORPORATION,<br><br>          Defendant. | Civil Action No. CV 08-2575-SI<br><br>LUXIM'S MOTION TO DISMISS CLAIMS OF CERAVISION'S FIRST AMENDED COMPLAINT<br><br>Date: Oct. 10, 2008<br>Time: 9:00 a.m.<br>Judge: Honorable Susan Illston |

1 **TO PLAINTIFF AND ITS COUNSEL OF RECORD:**

2  **PLEASE TAKE NOTICE** that on October 10, 2008 9:00 a.m., or as soon thereafter as
3 the matter may be heard, in the courtroom of the Honorable Susan Illston, located at 450 Golden
4 Gate Avenue, San Francisco, California, defendant Luxim Corporation ("Luxim") will and
5 hereby does move the Court to dismiss for lack of jurisdiction the claims asserted by plaintiff
6 Ceravision, Ltd. ("Ceravision") relating to paragraphs 12a-e and 12g-i in Count I of the First
7 Amended Complaint as well as Counts II and III of that pleading in their entirety.

8  This motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3)
9 and is based upon the pleadings in this action, this Notice of Motion, Motion and Memorandum
10 of Points and Authorities and portions of the record from the interference from which Ceravision
11 appeals attached as exhibits to the Argenti Declaration ("Ex. __") submitted herewith.

12 **I.    INTRODUCTION**

13  On March 24, 2008, after more than two years of interference proceedings at the U.S.
14 Patent and Trademark Office ("PTO"), the PTO's Board of Patent Appeals and Interferences (the
15 "Board") issued a Judgment ruling that Ceravision failed to prove that it should be given
16 "priority of invention" of the subject matter of the interference. In other words, the Board
17 decided that Ceravision failed to show that the individuals asserted by Ceravision to be the first
18 inventors were, in fact, the first inventors. The Board thus rejected Ceravision's attempts to
19 claim that subject matter and left Luxim's patent valid and enforceable.

20  Ceravision then filed this lawsuit. However, rather than seek a review of the Board's
21 decision, Ceravision seeks a new forum in which to reconstruct its case. Ceravision touts on its
22 website that this litigation is an opportunity to "properly examine for the very first time the
23 fundamental matters affecting the integrity of Luxim's core intellectual property." Ex. A.

24  To that end, Count I of Ceravision's Amended Complaint seeks to use 35 U.S.C. § 146 –
25 which is "essentially a proceeding to review the action of the Board" (*Boston Scientific Scimed,*
26 *Inc. v. Medtronic Vascular, Inc*., 497 F.3d 1293, 1298 (Fed. Cir. 2007)) – to introduce a host of
27 issues that could have been adequately raised during the interference, but were not. Those issues
28 include discovery requests that Ceravision abandoned at the outset of the interference (Amended

1   Complaint at ¶¶ 12a-b) and disputes that could have been, but were never raised at all, such as to
2   Luxim's entitlement to the benefit of its first patent application (*id.* at ¶ 12h) and
3   unenforceability due to alleged inequitable conduct during prosecution. *Id.* at ¶ 12i.

4       Likewise, Ceravision's Counts II and III seek to raise "correction of inventorship" issues
5   that could have been adequately raised with the PTO during the interference proceedings, but
6   were not. The question of inventorship is at the very heart of interference proceedings. A party
7   to an interference can move to correct inventorship of any application in the interference and can
8   move to add applications and patents to the interference. Although Ceravision initially requested
9   to correct the inventorship of Luxim's patent at issue in the interference and made an initial
10  request to include related Luxim applications in the interference, Ceravision also abandoned
11  those issues at the outset of the interference.

12      Having failed to adequately raise these issues during the interference proceedings,
13  Ceravision may not do so here. "In order for an issue to have been raised adequately so that it
14  qualifies for consideration in a § 146 proceeding, the issue should have been raised as specified
15  in the PTO's interference rules, for example, through preliminary motions, motions to correct
16  inventorship, miscellaneous motions, belated motions delayed for good cause or opposition to
17  these motions." *Conservolite Inc. v. Widmayer*, 21 F.3d 1098, 1102 (Fed. Cir. 1994). "Short of
18  such compliance with the regulations, issues may only be deemed raised for section 146
19  purposes if the record clearly demonstrates that the issue was undeniably placed before the
20  examiner-in-chief, and one or more parties insisted that the issue be resolved in the process of
21  deciding which of the parties was entitled to priority." *Gen. Instrument Corp. v. Scientific-*
22  *Atlanta, Inc.*, 995 F.2d 209, 214 (Fed. Cir. 1993). Thus, if an issue could have been adequately
23  raised during the interference, but was not, a district court is without jurisdiction to resolve that
24  issue. *See Human Genome Scis., Inc. v. Amgen, Inc.*, 552 F. Supp. 2d 466 (D. Del. 2008);
25  *compare Scimed Life Sys., Inc. v. Medtronic AVE Inc.*, 297 F. Supp. 2d 4 (D.D.C. 2003).

26      For that reason, as set forth below, Luxim respectfully requests that the Court dismiss
27  Ceravision's claims relating to paragraphs 12a-e and 12g-i in Count I and dismiss Counts II and
28  III in their entirety. As to the claims of Counts II and III based on 35 U.S.C. § 116, this Court

1  has held that a district court "does not have jurisdiction to correct a patent application under 35

2  U.S.C. § 116." *Display Research Labs., Inc. v. Telegen Corp.*, 133 F. Supp. 2d 1170, 1174 (N.D.

3  Cal. 2001). For that independent reason, those claims should be dismissed on the face of

4  Ceravision's pleading.

5  **II.    STATEMENT OF FACTS**

6       **A.    Summary of Interference Procedure**

7       U.S. patent law awards patents to the first to invent, rather than the first to file. There thus

8  exists a complicated administrative process called an "interference" over which the PTO has

9  jurisdiction to determine "priority of invention." 35 U.S.C. § 135; 37 C.F.R., Part 41.

10      To accomplish this, the PTO divides an interference into two phases: the "substantive

11 motions" phase and the "priority" phase. Before the substantive motions phase, the Board first

12 makes a preliminary determination of the subject matter of the interference by defining the

13 "count" (or counts) and designates the party with the later application as the "Junior Party." 37

14 C.F.R. §§ 41.201, 41.203(b). The Junior Party bears the burden of proof during the priority

15 phase. 37 C.F.R. § 41.207(a).

16      Also before the substantive motions phase, the parties provide notice of patent

17 applications and patents that claim benefit of the filing date of the applications or patents that are

18 the subject of the interference. *See* Ex. B ¶ 8.2. Involving additional patent applications or

19 patents to the pending interference can be accomplished by requesting that they be added directly

20 to the interference or by requesting that the PTO declare additional related interferences. *See id*.

21 ¶ 203. This allows the parties and the PTO to resolve in a single proceeding (or related

22 proceedings) as many issues concerning the related patent applications and patents as possible.

23 *Id.*

24      The "substantive motions" are generally filed to redefine the scope of interference, to

25 change the benefit date accorded for the contested subject matter, or for judgment outright (*e.g.*,

26 for unpatentability or unenforceability). 37 C.F.R. § 41.121(a)(1). An example of such a motion

27 is a request for correction of inventorship of a patent or patent application involved in the

28

interference. *See* Ex. B ¶ 121.1 and 37 C.F.R. §§ 1.67 (applications) and 1.324 (issued patents).[1] "Although the Board may consider any issue in order to prevent manifest injustice, … a party may not raise any issue at the final hearing that 'properly could have been raised' by a preliminary motion…, a motion to correct inventorship…, or in an opposition to these motions if the motions were successful, unless the party shows good cause for the failure to raise the issue in time." *Gen. Instrument*, 995 F.2d at 212 (citation omitted). Consequently, the Federal Circuit has advised that a party's preliminary motions take into account its "long-range strategy with respect to … priority and patentability issues in the interference." *Id.*

Either party may request a rehearing of any motion-related decision, including a decision not to authorize a motion. *See* Ex. B ¶ 125.1 and 37 C.F.R. § 41.125(c). To preserve an issue for appeal, it must be presented for consideration by a panel of the Board as prescribed by 37 C.F.R. § 41.125(b) and (c)(5). 37 C.F.R. § 41.125(b) ("[a] decision on motions without a judgment is not final for the purposes of judicial review. A panel decision on an issue will govern further proceedings in the contested case"); 37 C.F.R. § 41.125(c)(5) ("[i]f a decision is not a panel decision, the party requesting rehearing may request that a panel rehear the decision").

If the Board's rulings on the substantive motions do not terminate the interference, the interference moves into the priority phase, in which the Board receives testimony and evidence and decides the ultimate issue of priority of inventorship.

A party dissatisfied with the Board's final decision may request reconsideration of that decision, or it may seek judicial review. With respect to the latter, a party may proceed directly to the Federal Circuit for review based on the record before the Board, or it may institute a district court proceeding in which the PTO record is admitted on motion of either party, but may be supplemented by further testimony. *Gen. Instrument*, 995 F.2d at 212.

---

[1] "Inventorship" relates to who invented the subject matter claimed in a patent. "Priority of invention" relates to who *first* invented the subject matter claimed in a patent.

LUXIM'S MOTION TO DISMISS CLAIMS OF
CERAVISION'S FIRST AMENDED COMPLAINT        -4-
CASE NO. CV 08-2575-SI

### B.     The Interference From Which Ceravision Appeals

Luxim is a private company based in Sunnyvale, California. It was founded in 2000 by experts in plasma physics and high-frequency electronics to commercialize their inventions in microwave powered, electrodeless light sources. Ceravision is a private UK-based company that purports to be developing related technology.

Luxim is the owner by assignment of the patent on its founders' invention, U.S. Patent No. 6,737,809 ("the '809 patent"). The application that issued as the '809 patent was filed on March 15, 2001, based on a provisional application that was filed on July 31, 2000. Luxim's '809 patent lists as inventors Frederick M. Espiau, Yian Chang and Chandrashekhar J. Joshi (referred to collectively by the PTO as "Espiau").

Ceravision purports to be the owner by assignment of U.S. patent application 09/818,092 ("the '092 application") which it allegedly purchased from the assets of a bankrupt corporation in April 2004. Ceravision subsequently asked the PTO to declare an interference between the '092 application and Luxim's '809 patent. The '092 application lists as inventors Charles Guthrie, Edmund Sandberg, Gregory Prior, and Donald Wilson (referred to collectively by the PTO as "Guthrie").

On January 24, 2006, the Administrative Patent Judge designated to manage the interference ("APJ Medley") declared an interference between the '092 application and Luxim's '809 patent. *See* Ex. C. Luxim was granted the priority benefit of its July 31, 2000 provisional application. *Id.* at Part F. Ceravision never disputed that grant. Ceravision initially was accorded the benefit of eight provisional patent applications, the earliest of which was filed on August 9, 2000, and was thus declared to be the Junior Party. *Id*.

On February 4, 2006, Luxim filed Notice of Related Proceedings (as required by Standing Order ¶ 8.2), which listed applications that "either claim or may claim the benefit of the filing date of Espiau's involved U.S. Patent No. 6,737,809." *See* Ex. D. This notice lists all the applications that issued as the patents identified Counts II and III of Ceravision's Amended Complaint. *Id*.

1        On March 20, 2006, Ceravision and Luxim each filed (as required by Standing Order
2   ¶¶ 120 and 204) a "Motions List" – identifying the motions it anticipated filing during the
3   interference.  *See* Exs. E-F.  On March 23, 2006, APJ Medley issued an Order (the "Motions List
4   Order") authorizing some of the motions requested by the parties, but not others.  *See* Ex. G.
5        Within the prescribed 14-day period, Luxim asked APJ Medley to reconsider the decision
6   to not authorize of one of Luxim's requested motions.  *See* Ex. H.  Four days later, APJ Medley
7   authorized Luxim to file the requested motion.  *See* Ex. I.  Ceravision, on the other hand, never
8   made a timely request to reconsider any ruling APJ Medley's March 23, 2006 Motions List
9   Order.  Nor did Ceravision request to have any such issue be heard by a panel of the Board, as
10  contemplated by 37 C.F.R. § 41.125(b) and (c)(5), or otherwise insist that those issues be
11  resolved during the interference.
12       On February 27, 2007, the Board ruled on the parties' substantive motions.  *See* Ex. J.
13  Notably, the Board denied Ceravision's motion to be accorded benefit of a March 27, 2000
14  provisional application and granted Luxim's motion to deprive Ceravision of the benefit of the
15  eight provisional applications for which Ceravision had been earlier accorded benefit.  *Id*. at 5:1-
16  2.  Ceravision unsuccessfully requested that the Board reconsider and modify parts of the
17  Board's Decision.  *See* Exs. K-L.
18       On June 15, 2007, Ceravision filed its priority motion.  *See* Ex. M.  Espiau filed its
19  priority motion on August 2, 2007.  *See* Ex. N.  A final hearing took place on January 7, 2008.
20  *See* Ex. O.  On March 24, 2008, the Board entered its Decision and Judgment on priority.  *See*
21  Ex. P.  The Board found that Ceravision had failed to establish its *prima facie* case that (a) the
22  subject matter of the interference had been communicated to Luxim's founders before they
23  conceived of that subject matter; (b) the bankrupt company from which Ceravision alleges to
24  have bought the '092 application had "reduced to practice" that subject matter before Luxim
25  filed its patent application; and (c) the filing of Luxim's patent application inured to the benefit
26  of that bankrupt company.  *Id*. at 29, 36, 39.  The Board also dismissed Luxim's priority motion
27  as moot, and dismissed both parties' respective motions to exclude evidence.  *Id*. at 40-41.
28

### C.   Ceravision's First Amended Complaint

####    1.   Count I

Ceravision's allegations in paragraphs 12f, 12j-m and parts of paragraphs 12g-h in Ceravision's Amended Complaint (to the extent that Luxim understands them) relate to the Board's decisions on the parties' substantive and priority motions. As such, Ceravision's claims of Count I based on those particular allegations are not included in the relief Luxim seeks by this motion to dismiss. The remainder of Ceravision's claims which are based on the allegations in paragraphs 12a-e, 12i and parts of paragraphs 12g-h in Count I, as well as Counts II and III in their entirety, are the subject of this motion.

Paragraphs 12a and 12b of Ceravision's Amended Complaint object that APJ Medley did not authorize Ceravision's request to compel discovery from Luxim and Luxim's counsel. *See* Ex. F at ¶¶ 4, 6, 9 and 12. Paragraph 12d complains that APJ Medley did not authorize Ceravision's request "to seek correction of [Luxim's] '809 patent to add the [Ceravision] inventors as co-inventors." *See id*. at ¶ 14. Paragraph 12g complains in part that APJ Medley did not authorize Ceravision's motion to invalidate Luxim's '809 patent under 35 U.S.C. § 132 for allegedly containing "new matter." *See id*. at ¶ 16. Ceravision never asked APJ Medley to reconsider any of those rulings as prescribed by Standing Order ¶ 125.1. Ceravision never asked that that they be considered by a panel of the Board as prescribed by 37 C.F.R. § 41.125(b) and (c)(5) in order to preserve them for judicial review. Ceravision failed to place any of these issues before the Board and insist that that they be resolved in the interference.

Paragraph 12c complains that APJ Medley did not authorize Ceravision's request to be accorded the benefit of priority to four additional applications (each of which was filed later than Luxim's priority application). *See* Ex. F at ¶ 15. However, during a March 21, 2006 conference with APJ Medley, Ceravision agreed that none of those applications was necessary to support the subject matter of the count, and withdrew its request to file such a motion. *See* Ex. Q at 55:20-56:14; *see also* Ex. R at 3:1-4:2. On March 8, 2007, Ceravision attempted to revive its request to file that motion in response to Luxim's request that Luxim be allowed to file a priority motion for "derivation." Ceravision suggested that Ceravision might not oppose Luxim's request

because there was "one additional motion that Party Guthrie would like to file, and, perhaps, we can arrange some sort of agreement." Ex. V at 7:13-17.  APJ Medley granted Luxim's request and denied Ceravision's "arrangement," observing that Ceravision "should have filed a request for reconsideration within fourteen days of that decision, not a year later." Ex. R at 4:18-22. APJ Medley also concluded that "it would be unfair at this juncture of the proceeding to give [Ceravision] the opportunity to file a motion for the benefit of the four provisional applications. The Board has already decided motions regarding the benefit accorded [Ceravision].… It would be unfair to [Luxim] if [Ceravision] filed such a motion, since [Ceravision] could shore up its arguments and change position on issues already decided." *Id*. at 5:15-22.  Ceravision failed to place that issue before the Board and insist that that it be resolved in the interference.  Ceravision never asked that panel of the Board address that issue as required by 37 C.F.R. § 41.125(b) and (c)(5) in order to preserve it for judicial review.

The first half of paragraph 12h of Ceravision's Amended Complaint objects to the fact that Luxim was granted the benefit of priority of its July 31, 2000 provisional patent application. However, Ceravision never moved to deny Luxim that benefit during the interference as prescribed by 37 C.F.R. § 41.1 21(a)(iii) or otherwise place the issue before either APJ Medley or the Board and insist that that it be resolved in the interference.

Similarly, and to the extent that Luxim understands it, paragraph 12e complains that APJ Medley authorized Luxim to file a motion to deprive Ceravision of the benefit of its provisional applications.[2]  However, Ceravision never placed that issue before either APJ Medley or the Board and insisted that it be resolved in the interference. Ceravision never asked APJ Medley to reconsider that ruling as prescribed by Standing Order ¶ 125.1 and Ceravision never asked that that it be considered by a panel of the Board as prescribed by 37 C.F.R. § 41.125(b) and (c)(5) in

---

[2] Although Ceravision's avers that "Espiau was entitled to challenge whether the Guthrie provisional applications, for which the benefit of priority was claimed, met the written description requirement of 35 U.S.C. § 112 … (Paper 25)."  Ceravision conflates two separate substantive motions requested by Luxim in its Motions List and granted in APJ Medley's March 23, 2006 Motions List Order.  Compare Ex G at  2:7-8 (the motion Luxim filed as  "Espiau Motion 3") with 2:24-25 ("Espiau Motion 2").

LUXIM'S MOTION TO DISMISS CLAIMS OF
CERAVISION'S FIRST AMENDED COMPLAINT       -8-
CASE NO. CV 08-2575-SI

1  order to preserve it for judicial review. To the contrary, Ceravision filed a 20-page opposition to
2  Luxim's authorized motion without raising an objection to the fact that Luxim was permitted to
3  file the motion in the first place. *See* Ex. T.

4  Finally, paragraph 12i objects that APJ Medley's September 20, 2007 Decision on
5  Interlocutory Motions (Ex. S) did not authorize Ceravision to seek judgment against Luxim
6  based on alleged inequitable conduct "both prior to issuance of the '809 patent and in connection
7  with its conduct during the '393 Interference." Ceravision never raised the first alleged grounds
8  during the interference. Although Ceravision asked to file a motion based on the second alleged
9  grounds (Ex. U), Ceravision did not seek reconsideration of APJ Medley's denial of that request
10 as prescribed by Standing Order ¶ 125.1 and failed to place that issue before the Board and insist
11 that that it be resolved in the interference. Ceravision never insisted that a panel of the Board
12 address that issue as required by 37 C.F.R. § 41.125(b) and (c)(5) in order to preserve it for
13 judicial review.

### 2.    Counts II And III

15 Ceravision's Counts II and III seek "correction" of inventorship under 35 U.S.C. §§ 116
16 and 256 of "numerous" Luxim patents and unidentified applications "arising from the same facts
17 and circumstances surrounding the … Interference." Amended Complaint at ¶ 22. Both Counts
18 II and III allege that those patents and applications "improperly omit some or all of the Guthrie
19 Inventors" and "improperly name some or all of the Espiau Inventors." *Id.* at ¶¶ 22 and 26.

20 Of the eight patents identified in Counts II and III: (a) one (6,737,809) was the patent
21 involved in the interference; (b) four were requested by Ceravision's March 20, 2006 Motions
22 List to be added to the interference either as an issued patent (6,922,021) or by the applications
23 which subsequently issued as patents (7,348,732 7,362,056 and 7,372,209); and (c) the
24 remaining three (7,358,678, 7,362,054 and 7,362,055) issued from applications identified on
25 Luxim's February 4, 2006 Notice of Related Proceedings. Of those eight identified patents,
26 Ceravision requested authorization to file a motion to "correct" the inventorship of only one
27 (6,737,809) in its March 20, 2006 Motions List. *See* Ex. F. As mentioned above (*see supra* at
28 7:12-20), APJ Medley did not authorize Ceravision to file that motion – and Ceravision never

1 sought APJ Medley's reconsideration of that ruling or consideration of that ruling by a panel of
2 the Board or otherwise placed that issue before the Board and insist that it be resolved in the
3 interference.

4     With respect to Ceravision's request to add Luxim's 6,922,021 patent and Luxim's
5 applications which subsequently issued as patents 7,348,732 7,362,056 and 7,372,209 (as well as
6 two other of Luxim patent applications), APJ Medley's March 23, 2006 Motions List Order
7 authorized Ceravision to file a motion to add the '021 patent to the interference but not the
8 applications. *See* Ex. G at 2:2-3. As alleged in paragraph 12f of the Amended Complaint, the
9 Board denied that motion and Ceravision's Count I seeks judicial review of that decision. With
10 respect to the applications, however, Ceravision failed to place that issue before the Board and
11 insist that that it be resolved in the interference. Ceravision never asked APJ Medley to
12 reconsider that ruling as prescribed by Standing Order ¶ 125.1 and never asked that that it be
13 considered by a panel of the Board as prescribed by 37 C.F.R. § 41.125(b) and (c)(5) in order to
14 preserve it for judicial review. Moreover, with respect to the applications that issued as the
15 remaining three patents identified in Counts II and III (7,358,678, 7,362,054 and 7,362,055),
16 Ceravision never sought authorization to move to add them to the interference or otherwise to
17 place that issue before the Board or insist that that it be resolved in the interference.

18 **III.    CONTROLLING LAW**
19     **A.    Motions To Dismiss For Lack Of Subject Matter Jurisdiction**
20 "It is a fundamental principle that federal courts are courts of limited jurisdiction. The
21 limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be
22 neither disregarded nor evaded." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374
23 (1978). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary
24 affirmatively appears." *Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 969 (9th Cir.
25 1981). Accordingly, the burden rests on the party asserting federal jurisdiction to prove its
26 existence. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 376-78 (1994).
27     Federal Rules of Civil Procedure 12(b)(1) and 12 (h)(3) allows a party to bring
28 jurisdictional defects to a court's attention. A complaint will be dismissed if, looking at the

1   complaint as a whole, it appears to lack federal jurisdiction either "facially" or "factually."
2   *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).  A facial
3   attack questions the sufficiency of the pleading.  In reviewing a facial attack, a trial court accepts
4   the allegations of the complaint as true.  When a court reviews a complaint under a factual
5   attack, the allegations have no presumptive truthfulness and the court has discretion to consider
6   evidence outside the pleadings to resolve disputed jurisdictional facts without converting the
7   motion to one for summary judgment.  *See* 2 James W. Moore *et. al.*, *Moore's Federal Practice*
8   § 12.30[4] (3d ed. 2008).

9   There being "no statutory direction for procedure upon an issue of jurisdiction, the mode
10  of its determination is left to the trial court."  *Gibbs v. Buck*, 307 U.S. 66, 71-72 (1939).

11  **B.     Subject Matter Jurisdiction Over Appeals From Interferences**

12  28 U.S.C. § 1338(a) vests original jurisdiction over the subject matter of any civil action
13  arising under the patent laws exclusively in the United States District Courts.  35 U.S.C. § 146,
14  in turn, provides that "[a]ny party to an interference dissatisfied with the decision of the Board of
15  Patent Appeals and Interferences on the interference, may have remedy by civil action."  The
16  Federal Circuit has addressed the question of what issues are properly before a district court in
17  such an action.

18  In *Conservolite*, 21 F.3d at 1098, the district court had reversed the judgment of the PTO
19  Board in an interference based on an issue that had not been raised during the interference.  The
20  Federal Circuit in turn reversed the district court, holding that "[t]he legal error in the judgment
21  below resulted from the fact that the district court rested its decision on a ground not properly
22  before it."  *Id*. at 1100.  In so ruling, the Federal Circuit clarified that an issue may be considered
23  in a § 146 proceeding if it was raised "as specified in the PTO's interference rules, for example,
24  through preliminary motions, motions to correct inventorship, miscellaneous motions, belated
25  motions delayed for good cause, or opposition to these motions."  *Id*. at 1102.  "Short of such
26  compliance with the regulations, issues may only be deemed raised for section 146 purposes if
27  the record clearly demonstrates that the issue was undeniably placed before the examiner-in-
28  chief, and one or more parties insisted that the issue be resolved in the process of deciding which

1  of the parties was entitled to priority."  *Gen. Instrument*, 995 F.2d at 214.  *See also Scimed Life*

2  *Systems, Inc. v. Medtronic Vascular, Inc.*, 468 F. Supp. 2d 60, 68 (D.D.C. 2006) (plaintiff in a §

3  146 action was "precluded from arguing that the Board erred in denying priority … either under

4  the newfound constructive trust or equitable assignment theories advanced before this Court");

5  *aff'd sub nom.* 497 F.3d 1293 (Fed. Cir. 2007) ("[a] party may not … advance new legal theories

6  at the trial court level, even if the overarching legal issue was presented below"); *Gen.*

7  *Instrument*, 995 F.2d at 214 ("more is required than passing reference to the subject during the

8  course of the interference proceeding").

9        According to the Federal Circuit, "the parties to an interference must make a complete

10 presentation of the issues at the Board level so that the interference is efficient and not wasteful

11 of administrative and judicial resources."  *Conservolite*, 21 F.3d at 1102; *see also Boston*

12 *Scientific*, 497 F.3d at 1298.  Similar concerns were recently voiced in *Human Genome Sciences*

13 ("HGS"), where the Court dismissed a § 146 complaint for lack of subject matter jurisdiction.

14 According to the Court in *HGS*, the plaintiff had "failed to provide even enough information to

15 allow the Board to specifically define the scope of the dispute" and so "to allow HGS' § 146

16 appeal to go forward on this record … would constitute an effective usurpation of the Board's

17 original jurisdiction to determine priority."  *Human Genome Scis.*, 552 F. Supp. 2d at 474.

18 **IV.   ARGUMENT**

19       **A.   Paragraphs 12a-e and 12g-i Of Count I And Counts II And III In Their Entirety Should Be Dismissed As Not Adequately Raised Below**

20

21           **1.   Issues That Were Not Adequately Raised By Ceravision**

22       Five of the rulings about which Ceravision now complains were made in APJ Medley's

23 March 23, 2006 Motions List Order and one was made in APJ Medley's September 20, 2007

24 Decision on Interlocutory Motions.  Ceravision never asked APJ Medley to reconsider those

25 rulings or placed those issues before a panel of the Board and insisted that they be resolved in the

26 interference.

27       The first four (*i.e.*, not authorizing motions to take discovery of Luxim and Luxim's

28 counsel, not authorizing a motion to correcting inventorship and not authorizing a motion to

invalidate Luxim's patent) are described in paragraphs 12a, 12b, 12d and 12g of the Amended

1  Complaint. *See supra* at 7:12-20. Ceravision's only effort to include those issues in the
2  interference was telephonic oral argument that resulted in adverse rulings made in APJ Medley's
3  March 23, 2006 Motions List Order. *See* Ex. Q.

4  The fifth ruling (not authorizing a motion to be accorded benefit of additional
5  applications) is described in paragraph 12c of the Amended Complaint. *See supra* at 7:21-23.
6  However, Ceravision withdrew that motion from consideration before APJ Medley entered the
7  March 23, 2006 Motions List Order. Ex. Q at 55:20-56:14. And Ceravision only attempted to
8  revive it in exchange for a proposed agreement not to oppose Luxim's interlocutory request. Ex.
9  V at 7:13-17. On March 8, 2007, APJ Medley rejected Ceravision's tactical request as futile,
10 untimely and prejudicial. *Id*.

11  As described in paragraph 12i of the Amended Complaint, Ceravision also complains
12 about a sixth ruling (not authorizing a motion alleging inequitable conduct during the
13 interference) that was made in APJ Medley's September 20, 2007 Decision on Interlocutory
14 Motions. *See supra* at 9:4-13. APJ Medley denied Ceravision's request as untimely, observing
15 that "[t]he interference is now in the priority phase and near completion." Ex. S at 3:5-11.

16  Ceravision never asked APJ Medley to reconsider any of those six rulings as prescribed
17 by Standing Order ¶ 125.1. Ceravision never asked that any of those rulings be considered by a
18 panel of the Board as required by 37 C.F.R. § 41.125(b) and (c)(5) in order to preserve them for
19 judicial review. Ceravision never placed any of those issues before the Board and insisted that
20 that they be resolved in the interference.

21  Ceravision may not leapfrog the administrative process in the PTO. *Conservolite*, 21
22 F.3d at 1102. Having failed to adequately raise those issues in the interference and preserve
23 them for appeal, those issues are not properly before this Court and should be dismissed under
24 Federal Rule of Civil Procedure 12(b)(1).

25
26
27
28

**2.   Issues That Could Have Been Raised By Ceravision, But Were Not**

In addition to seeking to litigate issues in this Court that were not adequately raised in the interference, Ceravision seeks to litigate issues that could have been raised, but were not raised at all in the interference.

The ruling that Ceravision complains about in paragraph 12h of the Amended Complaint (granting Luxim the benefit of its July 31, 2000 application) was made in APJ Medley's January 24, 2006 Order Declaring the Interference. Ceravision never moved (as prescribed by 37 C.F.R. § 41.1 21(a)(iii)) to deny Luxim the benefit of its priority application.

The ruling that Ceravision complains about in paragraph 12e (authorizing Luxim's motion to deprive Ceravision of the benefit of its eight alleged applications) was made in APJ Medley's March 23, 2006 Motions List Order. Ceravision never objected to Luxim's request to file that motion or to APJ Medley's authorization to file that motion. To the contrary, Ceravision filed a 20-page opposition to Luxim's authorized motion without ever objecting to Luxim authorization to file the motion in the first place. *See* Ex. T.

The alleged ruling that Ceravision complains about in paragraph 12i (that it was "not entitled to seek judgment on the grounds [of] inequitable conduct … prior to the issuance of the '809 patent") is a complete fiction. No such ruling was ever made by APJ Medley or the Board because Ceravision never raised the issue during the interference.

Finally, Counts II and III of Ceravision's Amended Complaint ask the Court to "correct" the inventorship of eight Luxim patents (including Luxim's '809 patent that was the subject of the interference) and "numerous" unidentified applications filed by Luxim "arising from the same facts and circumstances surrounding the … Interference." Amended Complaint at ¶ 22. Ceravision was well aware of those patents and applications during the interference. Of those eight patents: (a) one (the '809 patent) was the patent involved in the interference and was the subject of a request by Ceravision to "correct" inventorship; (b) four were requested by Ceravision's March 20, 2006 Motions List to be added to the interference; and (c) the remaining three issued from applications identified on Luxim's February 4, 2006 Notice of Related Proceedings.

1  The only one of those eight patents the inventorship of which Ceravision requested to "correct" was Luxim's '809 patent. As mentioned above with respect to paragraph 12d of Count I (*see supra* at 7:12-20), APJ Medley did not authorize Ceravision to file that motion and Ceravision never sought reconsideration of that ruling as prescribed by Standing Order ¶ 125.1. Neither did Ceravision place that issue before a panel of the Board as prescribed by 37 C.F.R. § 41.125(b) and (c)(5) in order to preserve it for judicial review and insist that that it be resolved in the interference. Moreover, although the procedure was available to Ceravision to request to include in the interference the seven other Luxim patents listed in Counts II and III (or the applications that later issued as those patents) and to request that the Board "correct" their inventorship, Ceravision chose to use the interference as a stalking horse and to bypass the PTO's established procedure for handling inventorship disputes – which this Court found "is a better forum" for such claims. *Display Research*, 133 F. Supp. 2d at 1175-76.

Ceravision could have adequately raised each of those issues during the interference, but did not. Under established precedent, they do not qualify for consideration in a § 146 proceeding (*see Boston Scientific*, 497 F.3d at 1298; *Conservolite*, 21 F.3d at 1102; *Gen. Instrument*, 995 F.2d at 214) and should be dismissed from this action because this Court lacks jurisdiction over them. *Human Genome Scis.*, 552 F. Supp. 2d at 473-74; *compare Scimed Life Sys.*, 297 F. Supp. 2d at 7-9.

**B.  Ceravision's Claims In Counts II and III Based On 35 U.S.C. § 116 Should Be Dismissed Because Only The PTO May Correct Applications**

As this Court has held, a district court "does not have jurisdiction to correct a patent application under 35 U.S.C. § 116. *Display Research*, 133 F. Supp. 2d at 1174. That holding is consistent with subsequent appellate court precedent. *See Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1356, n.1 (Fed. Cir. 2004) ("section 116, however, only grants the [PTO] the authority to take certain actions and plainly does not create a cause of action in the district courts to modify inventorship on pending patent applications"); *E.I. Du Pont de Nemours & Co. v. Okuley*, 344 F.3d 578, 583-4 (6th Cir. 2003) ("Section 116 does not mention courts, but rather

gives discretion to the Director of the PTO to permit amendments to patent applications and to do so under such terms as the Director deems proper.").

Ceravision's claims in Counts II and III with respect to correction of inventorship on Luxim's "numerous" (and unidentified) patent applications (*see* Amended Complaint at ¶¶ 22-25 and 29-30) should be dismissed on the face of Ceravision's pleading.

## V.     CONCLUSION

For the reasons set forth above, Luxim respectfully requests that the Court dismiss for lack of subject matter jurisdiction Ceravision's claims relating to paragraphs 12a-e and 12g-i in Count I of Ceravision's Amended Complaint and Counts II and III of that Amended Complaint in their entirety.

Dated:  August 15, 2008              By:   /s/ Robert C. Morgan
                                            Robert C. Morgan
                                            ROPES & GRAY LLP

                                     Attorneys for Defendant
                                     LUXIM CORPORATION

1  Robert C. Morgan (SBN 46348)
   ROPES & GRAY LLP
2  1211 Avenue of the Americas
   New York, New York 10036-8704
3  Tel.: (212) 596-9000
   Fax: (212) 596-9090
4  robert.morgan@ropesgray.com

5  Clinton L. Conner (SBN 244244)
   ROPES & GRAY LLP
6  525 University Avenue
   Palo Alto, California 94301
7  Tel.: (650) 617-4000
   Fax: (650) 617-4090
8  clinton.conner@ropesgray.com

9  Terry Kearney (SBN 160054)
   Matthew A. Argenti (SBN 240954)
10 WILSON SONSINI GOODRICH & ROSATI
   650 Page Mill Road
11 Palo Alto, California 94303
   Tel.: (650) 493-9300
12 Fax: (650) 493-6811
   tkearney@wsgr.com
13 margenti@wsgr.com

14 Attorneys for Defendant
   LUXIM CORPORATION
15

16                    UNITED STATES DISTRICT COURT
                  FOR THE NORTHERN DISTRICT OF CALIFORNIA
17                         SAN FRANCISCO DIVISION

18

19 CERAVISION, LIMITED,                    Civil Action No. CV 08-2575-SI

20        Plaintiff,                       [PROPOSED] ORDER GRANTING
                                           LUXIM'S MOTION TO DISMISS
21     v.                                  CLAIMS OF CERAVISION'S FIRST
                                           AMENDED COMPLAINT
22 LUXIM CORPORATION,

23        Defendant.

24

25        The Court has considered the parties briefs, arguments of counsel, and the relevant case

26 law.  For good cause shown, IT IS HEREBY ORDERED:

27

28

[PROPOSED] ORDER GRANTING LUXIM'S
MOTION TO DISMISS CLAIMS OF
CERAVISION'S FIRST AMENDED COMPLAINT
CASE NO. CV 08-2575-SI

1  Luxim's Motion to Dismiss Claims of Ceravision's First Amended Complaint is
2  GRANTED. Ceravision's claims relating to paragraphs 12a-e and 12g-i in Count I of
3  Ceravision's First Amended Complaint and Counts II and III of that Amended Complaint are
4  dismissed with prejudice.

IT IS SO ORDERED.

Dated: _____     _____
                            Honorable Susan Illston
                            UNITED STATES DISTRICT COURT FOR THE
                            NORTHERN DISTRICT OF CALIFORNIA

[PROPOSED] ORDER GRANTING LUXIM'S
MOTION TO DISMISS CLAIMS OF
CERAVISION'S FIRST AMENDED COMPLAINT
CASE NO. CV 08-2575-SI